## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Robert McDonald, Petitioner Below,**
**Petitioner**

**vs) No. 12-0493** (Kanawha County 11-MISC-187)

**Marvin Plumley, Warden, Huttonsville**
**Correctional Center, Respondent Below,**
**Respondent**

**FILED**

April 16, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Robert McDonald, by counsel Scott Driver, appeals the March 21, 2012 order of the Circuit Court of Kanawha County denying his petition for writ of habeas corpus. Respondent Plumley, by counsel Andrew D. Mendelson, has filed a response.[1]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a jury trial, petitioner was sentenced in July of 2009 to a term of incarceration of ten to twenty years for his conviction of one count of sexual abuse by a parent, guardian, or custodian, and a term of incarceration of one to five years for his conviction of one count of third degree sexual assault, said sentences to run consecutively. Petitioner thereafter filed a direct criminal appeal which was refused by this Court. Petitioner then filed a petition for writ of habeas corpus in the circuit court and was appointed counsel to represent him in that proceeding. On March 21, 2012, after holding an omnibus hearing, the circuit court denied the petition for writ of habeas corpus.

On appeal, petitioner alleges that the circuit court erred in denying him habeas relief because he received ineffective assistance of counsel, the State failed to seek out and disclose potentially exculpatory evidence, and the prosecuting attorney made several allegedly improper and prejudicial remarks during closing argument at trial. In support, petitioner argues that his counsel was ineffective because he failed to adequately communicate with petitioner, failed to adequately investigate and ultimately call certain persons as witnesses, and failed to request a

---

[1] Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, the name of the current public officer has been substituted as a respondent in this action.

psychological examination. Further, petitioner alleges that the State could have obtained correspondence in which the victim claimed that her father, and not petitioner, perpetrated the sexual abuse, and that the prosecutor made remarks so prejudicial and inflammatory that he was denied the right to a fair trial.

Respondent argues that the circuit court did not abuse its discretion in making any of the findings from its order denying petitioner habeas relief. Specifically, the State argues that petitioner's counsel adequately represented him and petitioner failed to show that, but for counsel's allegedly ineffective representation, the outcome of trial would have been different. Further, the State argues that petitioner offered no evidence that any such exculpatory evidence even existed, and further that the allegedly prejudicial remarks from the prosecutor were properly based on trial testimony and spoke to the credibility of witnesses. For these reasons, respondent supports the circuit court's order and seeks to have the same affirmed.

This Court has previously held that

> [i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). After careful consideration of the parties' arguments, this Court concludes that the circuit court did not abuse its discretion in denying the petition for writ of habeas corpus. Having reviewed the circuit court's "Final Order Denying Petitioner's Amended Petition For Writ Of Habeas Corpus" entered on March 21, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal.[2] The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the circuit court and its March 21, 2012, order denying the petition for writ of habeas corpus is affirmed.

Affirmed.

---

[2] In keeping with this Court's policy of protecting the identity of minors and victims of sexual crimes, the circuit court order has been redacted to remove the identity of the victim.

2

**ISSUED:**  April 16, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Menis E. Ketchum

12-0493

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA
ex rel. ROBERT MCDONALD,
    Petitioner,

v.
                                   Civil Action No.: 11-MISC-187
                                   Judge Louis H. Bloom

ADRIAN HOKE, Warden,
HUTTONSVILLE CORRECTIONAL CENTER,
    Respondent.

## FINAL ORDER DENYING PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS

On September 1, 2011 and September 6, 2011, came the Petitioner, Robert A. McDonald ("Petitioner"), in person and via video conference, respectively, and by counsel, Scott Driver, and the Respondent, Adrian Hoke, Warden, Huttonsville Correctional Center, by counsel, Fred Giggenbach, Jr., Assistant Prosecuting Attorney in and for Kanawha County, for an omnibus hearing on the Petitioner's "Amended Petition for Writ of Habeas Corpus" ("Amended Petition"). Upon consideration of the evidence adduced at the omnibus hearing, the Amended Petition and the State's Response thereto, the underlying criminal record, and the applicable law, the Court is of the opinion that the Petitioner's Amended Petition for Writ of Habeas Corpus should be denied, based on the following findings of fact and conclusions of law.

### FINDINGS OF FACTS

1. The Petitioner was indicted in Kanawha County in Felony Indictment Number 09-F-206 for two felonies: (1) sexual abuse by a parent, guardian, custodian, or person in position of trust; and (2) third degree sexual assault.

1

2. John P. Sullivan ("Mr. Sullivan"), Assistant Public Defender for the Kanawha County Public Defender Office, represented the Petitioner throughout the pendency of the underlying criminal matter.

3. On June 1, 2009, after a jury trial before this Court, the Petitioner was found guilty of Count One, sexual abuse by a parent, guardian, custodian, or person in position of trust and Count Two, third degree sexual assault.

4. By order entered July 2, 2009, this Court sentenced the Petitioner to an indeterminate term of ten to twenty years on Count One and an indeterminate term of one to five years on Count Two, to run consecutively to the sentence imposed on Count One.

5. This Court also ordered the Petitioner to serve a period of thirty (30) years of supervised release as a convicted sex offender pursuant to W.Va. Code § 62-12-26.

6. On March 11, 2012, the Petitioner's direct appeal to the Supreme Court of Appeals of West Virginia was refused.[1]

7. The West Virginia State Bar's Office of Disciplinary Counsel admonished Mr. Sullivan for not having sufficient contact with the Petitioner. However, no findings were made by the Office of Disciplinary Counsel as to whether or not Mr. Sullivan provided "ineffective assistance of counsel" or whether "but-for" any such omissions or errors by Mr. Sullivan, the results of the proceedings would have been different. In fact, the Office of Disciplinary Counsel closed the complaint made by the Petitioner.

8. On September 1, 2011 and September 6, 2011, this Court held an omnibus habeas corpus

---

[1] Kristopher Faerber represented the Petitioner for the perfection of his direct appeal to the Supreme Court of Appeals of West Virginia. Mr. Faerber's performance as appellate counsel is not alleged to have been ineffective and such ground was not raised by the Petitioner in his Amended Petition. *See* Amended Petition; Omnibus Hearing Transcript, Exhibit One (Petitioner's *Losh* Checklist).

hearing as contemplated in W.Va. Code § 53-4A-1, *et seq.*, and further explicated in *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

9. At the onset of the omnibus hearing, the Court and the Petitioner's counsel made extensive inquiry, on the record, of the Petitioner regarding the waiver of potential grounds for habeas relief. The Petitioner testified that he knew and understood each element of the possible grounds for habeas relief and that he did in fact make a knowing and intelligent waiver of all possible grounds not raised herein, as defined in *Losh v. McKenzie, supra*. Thus, the Court finds that the Petitioner, with the advice of counsel, knowingly and intelligently waived all grounds not asserted herein.

10. In his Amended Petition and at the omnibus hearing, the Petitioner raised the following three grounds for relief: (1) Ineffective assistance of trial counsel; (2) Failure of the State to disclose to the defense potentially exculpatory evidence; and (3) Denial of a fair and impartial trial by alleged improper prejudicial remarks made by the prosecutor during closing argument.

11. At the omnibus hearing, the Petitioner called himself as a witness, as well as his trial counsel in the underlying criminal matter, Mr. Sullivan. The Petitioner only presented evidence on the ground of ineffective assistance of trial counsel and submitted the other two grounds set forth in the Amended Petition on the record, as such grounds present no question of fact. Omnibus Hearing Transcript ("Hr. Tr."), p. 8.

## DISCUSSION

### *Ineffective Assistance of Trial Counsel*

1. First, the Petitioner alleges that Mr. Sullivan did not provide him effective assistance of counsel. In West Virginia, claims of ineffective assistance of counsel are governed by the two-

pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). That two-pronged test is: (1) whether counsel's performance was deficient under an objective standard of reasonableness; and (2) whether there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. Syl. pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

2. With regard to the first prong of the test, a petitioner must first "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *State ex rel. Myers v. Painter*, 213 W.Va. 32, 35, 576 S.E.2d 277, 280 (2002) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). The petitioner's burden in this regard is heavy, as there is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....'" *Id.* (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). In reviewing counsel's performance, "courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Syl. pt. 6, *State v. Miller*, *supra*. Therefore, a reviewing court must ask "whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." *Id.* However, counsel's strategic decisions must rest upon a reasonable investigation enabling him or her to make informed decisions about how to represent criminal clients. *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 423 (1995).

3. The second prong of the test looks to whether counsel's performance, if found to be deficient, adversely affected the outcome in a given case. *State ex rel. Myers v. Painter*, 213 W.Va. at 36, 576 S.E.2d at 281. Therefore, a petitioner must demonstrate that the complained of

4

deficiency or errors of counsel resulted in prejudice or a "reasonable probability" that in the absence of such errors the result of the proceedings would have been different.

4. Finally, in deciding an ineffective assistance of counsel claim, the Supreme Court of Appeals of West Virginia has stated that a court may dispose of such claim "based solely on a petitioner's failure to meet either prong of the [*Strickland*] test." *Legursky*, 195 W.Va. at 321, 465 S.E.2d at 423.

5. The crux of the Petitioner's ineffective assistance of trial counsel claim is that Mr. Sullivan failed to adequately communicate with him, failed to adequately investigate and ultimately call certain persons as witnesses to impeach the victim's testimony, and failed to request a psychological evaluation. Hr. Tr., pp. 19; Memorandum in Support of Amended Petition, unnumbered p. 6.

6. The Petitioner testified that he first met Mr. Sullivan, his court-appointed counsel at the felony preliminary hearing held in the underlying criminal matter. Hr. Tr., p. 18. The Petitioner claims that he did not meet with Mr. Sullivan enough times prior to trial. According to the Petitioner, during Mr. Sullivan's representation of him, Mr. Sullivan only met with him twice, for approximately fifteen minutes each time, to discuss his case with him. Hr. Tr., p. 23. The Petitioner further testified that Mr. Sullivan did not review the discovery or the victim's statement with him. Hr. Tr., p. 24. Based on such allegation of lack of communication by Mr. Sullivan, the Petitioner argues he received ineffective assistance of trial counsel, entitling him to habeas relief.

7. Mr. Sullivan testified that he met with the Petitioner three to four times prior to trial and

5

that at least one of the meetings, if not more, lasted for an hour to an hour and fifteen minutes. Hr. Tr., p. 141. Upon inquiry by the Court, Mr. Sullivan testified that objectively speaking he spent sufficient time preparing for the Petitioner's trial. Hr. Tr., p. 115. Mr. Sullivan also disputed the Petitioner's testimony that he did not discuss with him prior to trial the witnesses that were going to testify. Hr. Tr., p. 116. Mr. Sullivan also requested a specific jury instruction for the Petitioner, moved to suppress the Petitioner's incriminating statements made to others, and argued to have the entire case dismissed on behalf of the Petitioner. Hr. Tr., pp. 46-48.

8. At the criminal trial, the state introduced incriminating statements made by the Petitioner, including a statement to law enforcement officers after he was charged with the crimes in which the Petitioner said, "My life is over; I need some help." Hr. Tr., p. 47. The Petitioner testified that Mr. Sullivan did in fact argue to keep that statement from being admitted at the Petitioner's trial, but without success. No amount of increased meetings with trial counsel or work by an investigator would have changed the incriminating statements by the Petitioner. The incriminating statements made by the Petitioner, in fact, helped to corroborate the victim's testimony about the sexual assault. Furthermore, the Petitioner testified that the key issue at his trial was credibility of the witnesses, specifically, his credibility versus that of the victim's. Hr. Tr., p. 29. Thus, such incriminating statements made by the Petitioner and admitted at trial diminished the credibility of his testimony that he was innocent and it is not reasonably probable that more meetings would have changed the effect on the jury of such statements.

9. On October 29, 2009, the Petitioner filed an ethics complaint with the West Virginia Lawyer Disciplinary Board ("Board") against Mr. Sullivan, in large part, due to the Petitioner's perceived failure of Mr. Sullivan to adequately communicate with him during the pendency of his criminal proceeding. On December 29, 2009, Mr. Sullivan filed his written response to the

complaint. In his response, Mr. Sullivan denied that he provided the Petitioner with ineffective assistance counsel and although he conceded that he should have met with the Petitioner more prior to his trial, he stated that he still thought he had sufficient meetings and discussions with the Petitioner to adequately prepare the case for trial, because it was not a complex case. Petitioner's Exhibit 3, Board's Investigative Panel Findings and Conclusions, p. 3.

10. By order entered April 6, 2011, the Board found that Mr. Sullivan's conduct "clearly fell short of the Rules of Professional Conduct in this matter." Petitioner's Exhibit 3, p. 3. The Board admonished Mr. Sullivan for his violations of Rules 1.3 and 1.4 of the Rules of Professional Conduct, for his failure to reasonably communicate with the Petitioner. *Id.* The Board also noted that Mr. Sullivan had previously been admonished for violations of Rules 1.3 and 1.4 and found that a pattern of misconduct has been established by Mr. Sullivan. *Id.* However, the Board did not address the allegations that Mr. Sullivan provided ineffective assistance to the Petitioner, appropriately stating that such should be addressed by the courts. *Id.* at 4.

11. The Court finds that the Petitioner lacks credibility as to the issue of the alleged lack of communication by Mr. Sullivan prior to his trial. Even if this Court did adopt the findings and conclusions of the Board, that Mr. Sullivan did not adequately communicate with the Petitioner during the pendency of the underlying criminal proceeding, there is no evidence on the record to show that "but-for" such failure to adequately communicate with the Petitioner the results of the trial would have been different. Although Mr. Sullivan conceded that he may not have kept in reasonable contact with the Petitioner during the pendency of the case, he also stated that he adequately investigated the facts of the case prior to trial and provided an adequate defense of the Petitioner at trial. Furthermore, the Petitioner himself had made incriminating statements to law

7

enforcement, lending to the victim's credibility. Finally, as stated above and conceded by the Petitioner, the Petitioner's trial came down to whom the jury found more credible, the Petitioner or the victim.

12. The Petitioner also claims that Mr. Sullivan provided him ineffective assistance of counsel by failing to adequately investigate and call as witnesses certain persons identified by the Petitioner. The Petitioner identified five persons he thought Mr. Sullivan should have investigated and called to testify as witnesses on his behalf at his trial. Specifically, the Petitioner testified that his brother, his father, and his father's girlfriend all witnessed the victim's behavior later in the day after the sexual assault and thus, should have been called to testify to such behavior to attack the credibility of the victim. Hr. Tr., p. 30. However, the Petitioner offered no evidence as to specifically what testimony would have been provided by such persons, but only made conclusory statements that Mr. Sullivan was ineffective because he failed to have such witnesses testify at trial.[2] However, the Petitioner testified that the key issue at his trial was whether the jury believed him or the victim and that he did not understand the law, such as the rules of evidence. Hr. Tr., pp. 43, 51. Furthermore, at the time of the sexual assault there were only three people present, the Petitioner, Heather McDonald, and the victim, all three of whom testified at the trial. Hr. Tr., p. 39.

13. Mr. Sullivan testified that he did not think the persons identified by the Petitioner as potential witnesses were relevant witnesses and did not see how such persons' testimony would have been important to the jury. Hr. Tr., p. 148. Such decision by Mr. Sullivan was a strategic trial decision to not cause unnecessary "side issues" for the jury. Hr. Tr., pp. 117-118. Mr. Sullivan also disputed the Petitioner's testimony that he did not discuss with him prior to trial the

[2] Petitioner's counsel represented to the Court that the Petitioner was not challenging the sufficiency of the evidence, but that his trial counsel was ineffective for his failure to investigate and call the three persons to testify on his behalf. Hr. Tr., p. 31-32.

8

witnesses that were going to testify. Hr. Tr., p. 116. Finally, Mr. Sullivan testified that he did adequately investigate the actual witnesses, meaning anyone who had actual relevant evidence of the crime, and that he had knowledge of the facts of the case and had the proper witnesses testify at trial to provide the Petitioner with a defense. Hr. Tr., p. 107-108.

14. The Court concludes that the Petitioner has failed to meet his burden to show that Mr. Sullivan was ineffective based on his alleged failure to investigate and call to testify the above-named persons identified by the Petitioner. As stated above, to show ineffective assistance counsel a petitioner must show not only that counsel's performance was deficient, but that absent such deficient performance, the result of the proceeding would have been different. Furthermore, the court may dispose of such claim for failure to satisfy either prong of the two-prong test. In the instant matter, even if this Court found that Mr. Sullivan was deficient by allegedly failing to investigate and call the persons requested by the Petitioner, the Petitioner failed to put forth any evidence to show that such alleged deficient performance would have changed the outcome of his jury trial, but only made conclusory statements about what such persons may or may not have witnessed about the victim's behavior after the sexual assault.

15. The Petitioner also alleges that Mr. Sullivan provided ineffective assistance of counsel based on his failure to move for a psychological evaluation of the Petitioner. Memorandum in Support of Amended Petition, unnumbered p. 6. However, at the omnibus hearing the Petitioner offered no evidence as to what specifically such a psychological evaluation would have shown, let alone how but-for the absence of such evaluation the results of the underlying criminal proceedings would have been different. The Petitioner only testified that he never had a psychological evaluation and his Amended Petition that such psychological evaluation could have provided mitigating circumstances. Hr. Tr., p. 25. Although Mr. Sullivan testified that he

9

should have moved for a psychological evaluation of the Petitioner and does so now in all cases like that of the Petitioner's, such testimony was regarding a psychological evaluation for the purpose of sentencing, after the Petitioner was found guilty. Furthermore, Mr. Sullivan testified that his reasoning at the time for not requesting a psychological evaluation of the Petitioner was because the Petitioner in all his conversations with him maintained his total innocence and under such circumstance he would not have been found appropriate for counseling. Hr. Tr., pp. 136-137; State's Exhibit 1. Also, Mr. Sullivan filed objections to the pre-sentence report on behalf of the Petitioner. Hr. Tr., p. 138. Based on the evidence presented on this issue, the Court finds and concludes that the Petitioner failed to meet his burden to show that "but-for" Mr. Sullivan's failure to request a psychological evaluation, the results of his trial would have been different. Accordingly, this issue must fail.

### Exculpatory Evidence Claim

16. The Petitioner alleges that he was deprived a fair trial in violation of his due process, because of the State's alleged failure to exercise its affirmative duty to diligently seek out and turn over to the Petitioner's defense counsel potentially exculpatory evidence. Memorandum in Support of Petitioner's Amended Petition, unnumbered p. 2. Specifically, the Petitioner points to MySpace conversations between the victim and an acquaintance which were potentially exculpatory and argues that the State did not diligently pursue such evidence. The Petitioner alleges that such conversations may have implied that the victim was sexually abused by her father, not the Petitioner. *Id.* at unnumbered p. 8. However, other than such conclusory statement the Petitioner offered no specific evidence that such conversations took place or contained exculpatory statements. Furthermore, the State had no knowledge of such MySpace conversations until the day of trial, which according to Mr. Sullivan, the State made him

10

immediately aware of such potential evidence and he was able to review such records. Trial Transcript, pp. 154-156. Also, at the omnibus hearing, Mr. Sullivan testified that from his memory such MySpace records contained no useful information or that there was no way to authenticate such records. Thus, based on the evidence presented on this issue, the Court finds and concludes that the Petitioner is not entitled to habeas relief based on such issue.

*Improper Prejudicial Remarks Claim*

17. The final ground asserted by the Petitioner for habeas relief is that the prosecutor's extensive and repeated improper prejudicial remarks during closing argument confused and inflamed the jury, denying the Petitioner of his constitutional right to a fair trial and entitling him to habeas relief. Memorandum in Support of Amended Petition, unnumbered p. 9. Specifically, the Petitioner points to the following remarks made by the assistant prosecutor in closing argument to support his claim of improper prejudicial remarks:

a. "She had to talk about the sexual assault examination that is so invasive. She had to talk about having her pubic hair plucked from her body, about how a doctor had to insert things into her vagina and swab to look for DNA. Are those things that a 13 year old child would do just for the sake of it, just for the fun of it? She talked to you about how she had to have her blood drawn, how she was prescribed antibiotics for sexually transmitted diseases after what happened at his house, a sexually transmitted disease she may have contracted by                    . Is that anything a 13 year old child should have to endure?" Trial Transcript, pp. 389-390.

b. "              did what she had to do; she followed through and came into Court to tell her story. She didn't want to be here. She had no vendetta against this person. She is not vindictive. She's a 13 year old girl who went through this traumatic event, and she did what she had to do.

...

"Are you going believe Heather [McDonald] over              ? Are you going to believe [the Petitioner] over              ?              had no motive to lie." Trial Transcript, pp. 390-391.

c. "Think about what              said. She told you that on November 10th/11th of last year Mr. McDonald picked her up, he picked Heather up, they were all at his house, he had been smoking pot, and by his account he smokes pot all the time. By his own

account, smoking pot affects judgment. He told you he had been smoking pot." Trial Transcript, p. 391.

Memorandum in Support of Amended Petition, unnumbered pp. 10-11.

18. To determine whether improper prosecutorial comment is so damaging as to require reversal, the following four factors are to be considered: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. Syl. pt. 6, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

19. In examining the above prosecutorial comments cited by the Petitioner as improperly prejudicial, the Court concludes that such comments are not improper prosecutorial comment. First, although the Petitioner asserts that the prosecutor's remarks about the rape kit examination and the potential for contracting sexually transmitted diseases were irrelevant; such remarks were based on the testimony offered by the victim at trial and went to the main issue before the jury, witness credibility. Second, the Petitioner argues that the reference to the Petitioner's pot smoking was improper because such was nothing more than attempt to attack the credibility and character of the Petitioner. However, again, it was by the Petitioner's own testimony that he smoked pot on the day of incident and that doing so affects judgment. The prosecutor did nothing more than highlight this testimony, leaving the jury to draw its own conclusion from such. Finally, the Petitioner argues that the remarks made about the credibility of the witnesses' testimony were improper because it opined as to the victim's character. However, such remarks were nothing more than argument comparing the witnesses' testimony.

20. Based on the above the four factors set forth in *State v. Sugg*, the Court concludes that the

12

prosecutorial comments complained of by the Petitioner were not so damaging to require reversal or in this case entitling the Petitioner to habeas relief. Such remarks would not have a tendency to mislead the jury, as they were nothing more than an argument based on the testimony the jury had already heard. Furthermore, even if this Court concedes the Petitioner's argument that the remarks were extensive, absent such remarks, the strength of competent proof introduced to establish the guilt of the accused was great, especially in light of the Petitioner's incriminating statements following the crime. Finally, there is no proof whatsoever, explicit or implicit, to suggest that such comments were deliberately said before the jury to divert its attention to extraneous matters. *State v. Sugg, supra.* Therefore, the Court concludes that the Petitioner's claim he is entitled to habeas relief based on improper prosecutorial comments must fail.

## CONCLUSIONS OF LAW

Based on the foregoing, the Court concludes that the Petitioner failed to meet his burden of proof under *Strickland, supra,* for his claim of ineffective assistance of trial counsel entitling him to habeas relief. Even if the Court concluded that the Petitioner did satisfy the first prong of the *Strickland* test, *supra,* the Court concludes that the Petitioner failed to show how the alleged deficiencies of his trial counsel actually prejudiced him or that there is a reasonable probability that, absent such deficient performance, the outcome of his trial would have been different. Furthermore, as discussed more fully above, the Court concludes that the Petitioner failed to demonstrate that the State failed to disclose exculpatory evidence to the defense prior to trial or that under the four factors set forth in *Sugg, supra,* that the prosecutor's closing remarks were improper. Thus, the Court concludes as a matter of law that the Petitioner is not entitled to habeas corpus relief.

13

## DECISION

Accordingly, the Court does hereby **ORDER** that the Petitioner's Amended Petition for Writ of Habeas Corpus is **DENIED**. There being nothing further, the Court does further **ORDER** that the above-styled action be **DISMISSED** and **STRICKEN** from the docket of this Court. The objections of any party aggrieved by this Order are noted and preserved.

The Clerk is **DIRECTED** to send a certified copy of this Order to all counsel of record, to the Respondent, and to the Petitioner at the following addresses:

Scott Driver, Esq.
P.O. Box 911
Charleston, WV 25323

Fred Giggenbach, Jr., Esq.
Asst. Prosecuting Attorney
301 Virginia Street, East
Charleston, WV 25301

Adrian Hoke, Warden
Huttonsville Correctional Center
P.O. Box 1
Huttonsville, WV 26273

Robert McDonald
Huttonsville Correctional Center
P.O. Box 1
Huttonsville, WV 26273

**ENTERED** this 2—day of March, 2012.

**Louis H. Bloom, Judge**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY
AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT,
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS
DAY OF
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

14